UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: <u>March 21, 2014</u> |

KEVIN SAXON,

                              Petitioner,

            - against -

JOHN B. LEMPKE,

                              Respondent.

**MEMORANDUM**
**OPINION & ORDER**

09 Civ. 1057 (PGG) (KNF)

PAUL G. GARDEPHE, U.S.D.J.:

          Petitioner Kevin Saxon, proceeding <u>pro se</u>, brings this petition for a writ of habeas

corpus (the "Petition") pursuant to 28 U.S.C. § 2254.  On May 23, 2011, Magistrate Judge Kevin

N. Fox issued a Report and Recommendation ("R & R"), recommending that the Petition be

denied.  (Dkt. No. 18)  Both Saxon and Respondent filed objections to the R&R.  (Pet. Obj. (Dkt.

No. 24); Resp. Obj. (June 14, 2011 Ltr.))  For the reasons set forth below, the Court hereby

adopts the R & R in its entirety.  Accordingly, Saxon's Petition will be denied.

## BACKGROUND

**I.     FACTS**

          Saxon challenges a June 11, 2002 judgment imposed by the Supreme Court of the

State of New York, New York County, after he pled guilty to an eleven-count indictment

charging him with, <u>inter alia</u>, second degree murder.[1]  The Indictment stemmed from an

investigation of a violent narcotics trafficking organization based in the Lincoln Housing

Projects ("LHP") in Manhattan.  (R & R (Dkt. No. 18) at 3 (citing Resp. Ex. A ("Indictment")))

The investigation revealed that Saxon was a leader of the gang, that he had participated in

---

[1]  Saxon has not objected to the factual portions of the R & R.  Accordingly, this Court's factual
summary is drawn primarily from the detailed account set forth in the R & R.

numerous drug sales, and that he was involved in acts of violence, including the drug-related

murder of LHP resident Richard Gaines.  (Id. at 3 (citing Indictment and Resp. Ex. C (Pre-

Sentence Memorandum)))

On August 9, 2001, Saxon entered into a written cooperation agreement with the

New York County District Attorney's Office ("DAO").  (R & R (Dkt. No. 18) (citing Resp. Ex.

B (the "Agreement"))  In the Agreement, Saxon promised, inter alia, to:  (1) "furnish information

and testimony" to the DAO "in connection with the investigation and prosecution of criminal

activity involving or related to violent drug gangs;" (2) testify before the "Grand Jury and in any

trial or trials or ancillary proceedings;" (3) "refrain from any and all further criminal activity;"

and (4) plead guilty to an eleven-count indictment that included murder, weapons, and drug

trafficking charges.  (Agreement ¶¶ 2-5)

In exchange for Saxon's promised cooperation, the DAO agreed that it would

allow Saxon to "withdraw his guilty plea to Murder in the Second Degree . . . and replead to

Manslaughter in the First Degree" once it had determined that Saxon had "provided full and

complete cooperation and testimony."  (R & R at 4 (citing Agreement ¶ 7))  If Saxon met his

obligations under the Agreement, the DAO agreed to "recommend that he be sentenced to

eighteen years incarceration on his guilty plea to Manslaughter in the First Degree" and that "his

sentence to his guilty pleas on the remaining counts in [the] Indictment . . . run concurrent to the

eighteen year sentence."  (Agreement ¶ 7)  Saxon was on parole at the time of his plea, and the

Agreement memorialized the parties' understanding that Saxon "ha[d] not been violated by the

New York State Department of Parole at the time of this agreement and that any parole time

owed by [Saxon] will run concurrent to the eighteen years specified in Paragraph Seven until he

2

is sentenced under this agreement." (Id. ¶ 8)  The DAO further promised to "take all reasonable precautions to ensure [Saxon's] safety and that of [Saxon's] family."  (Id. ¶ 9)

Saxon entered his guilty plea on August 9, 2011 – the same day that he signed the Agreement.  (Pet. Ex. A (Plea Transcript ("Tr.") 3)  At the plea proceeding, Saxon acknowledged, inter alia, that (1) he was pleading guilty, pursuant to the Agreement, of his own free will; (2) he had discussed the case and the Agreement thoroughly with his attorney; (3) all of his questions had been answered; (4) he understood that, by pleading guilty, he was giving up his right to a jury trial; and (5) he was telling the truth.  (R & R (Dkt. No. 18) at 5 (citing Plea Tr. 2-5))  Saxon then allocuted to the elements of all of the charged crimes.  (Plea Tr. 5-11)  In response to the court's questioning, Saxon also acknowledged that he was waiving his right to appeal, "although it[']s not in the written agreement."  (Id. at 15-16)  Saxon's counsel confirmed that he had discussed the appellate waiver with Saxon and that Saxon was "waiving his right to appeal knowingly [and] voluntarily."  (Id. at 11, 15-16)

The trial judge advised Saxon of the consequences of breaching the Agreement, including the fact that the court would be "free to impose the maximum [sentence]."  (Id. at 14)  The court also informed Saxon that the prosecutor, and not the judge, would be the ultimate arbiter of his cooperation.  (Id. at 12-13)

The court and the parties then discussed whether the eighteen-year sentence promised in the Agreement would run concurrent with "the two years, four months" that Petitioner would owe the Division of Parole for violating his parole.  (Id. at 17)  Under New York law, Petitioner would be required to serve six-sevenths of his eighteen-year sentence, which amounts to approximately fifteen years and four months.  Saxon's counsel, the court, and the Hillel Bodek, the court's sentencing expert, engaged in the following colloquy:

[DEFENSE ATTORNEY]: . . . I want it to be crystal clear . . . that this determinate sentence of eighteen years, as well as the two years, four months he owes to the New York State Division of Parole is to run concurrent. . . . [And] on that eighteen year sentence, he has to do six sevenths, which comes out to be approximately fifteen years and four months.  What we envision and what we are requesting, everyone is agreeing to, is that the time he owes parole runs concurrent to the fifteen years four months that he will have to serve on the eighteen year sentence and that it not at any time run consecutive.

THE COURT:  Normally of course it does run consecutively.  Apparently Mr. Bodek and [the prosecutors] have worked this out.

MR. BODEK:  The sentence must run consecutively.  It will run consecutively.  However, my reading of it as well as the reading of the counsel of the State Department of Correctional Services [is that] given the amount of time he has done, and the eighteen years of that determinate sentence, that he will serve on that case which is 15 years and change, six sevenths of the eighteen, whatever that is and that would satisfy any parole time he might still owe if they violate him.  So all of the time won't run concurrent per se.  In effect it will have that same result.  He should get out at six sevenths of his eighteen years. . . .

THE COURT:  This is why I was surprised by your statement.  As far as I know, parole time did have to run consecutive.

[DEFENSE ATTORNEY]:  As a matter of law I agree with the Court.  I want the record to be clear, whether we call it consecutive or concurrent, I think what Mr. Bodek is saying is that the amount of time Mr. Saxon will have to serve, will cover his obligation to the New York State Division of Parole.  That is what he is saying.

MR. BODEK:  One thing.  There have been almost no cases that I could find on this issue.  It's a relatively new statute.  I do have a call into the Division of Parole.  And this issue hasn't come up yet and I am going to hear from their counsel next week I hope.

THE COURT:  That is fine.  We have plenty of time in which to deal with this issue.  That is not the problem at the moment.  I think what is clear in the record, what is important is that the intent be that the [e]ffect of the time owed by parole, assuming the cooperation is successful in the People's eyes, in effect have a concurrent effect.  And that is as long as that intent is on the record, I feel we would be able to work that out.

[DEFENSE ATTORNEY]:  I don't want it to be my request or my desire, but the intention of the [District Attorney]'s office.

THE COURT:  I think it is clear that if the cooperation is fully successful, that will be an intention they will be forced to implement because it[']s so stated on the record.  However, they will be evaluating the cooperation and if it is not satisfactory or partially

4

satisfactory, then you have to understand Mr. Saxon, they will come back with some immediate recommendation or potentially tell me to impose the maximum consecutive on all sentences. That is clear to you; is it not?

[THE DEFENDANT]: Yes.

[THE PROSECUTOR]: Paragraph eight of the agreement is specifically focused on that issue. He is on parole for a Bronx County indictment. He had not been violated by the State Department of Parole at this time, of this agreement or as of today. And the agreement states that any parole time owed by Kevin Saxon will run concurrent. I am using concurrent as a general definition, not as a legal definition, concurrent to the eighteen years specified in paragraph seven [of the cooperation agreement] until he is sentenced under the agreement.

THE COURT: It[']s important that we understand I can't do what is illegal. I cannot at the time of sentence say parole is to run concurrent. I can only attempt with Mr. Bodek's help to state it in a way that is lawful but achieves the result that is sought.

[DEFENSE COUNSEL]: Intention of the parties. That is the intention of all the parties, subject to the evaluation of Mr. Saxon's cooperation.

(Id. at 17-21)

Saxon then withdrew his not guilty plea, and pled guilty to the eleven-count

Indictment. (Id. at 22-23)

Saxon subsequently breached the Agreement. On May 2, 2002 – during transport

to the Westchester County Jail in Valhalla, New York, after testifying before a grand jury in New

York County – Saxon escaped. (R & R (Dkt. No. 18) at 7) He was apprehended in Yorktown,

Virginia on May 22, 2002. (Id.)

After his capture, Saxon appeared for sentencing on his guilty plea. After Saxon

admitted his prior weapons and manslaughter convictions, the court determined that he was a

predicate violent felony offender. (Pet. Ex. B (Sentencing Tr. 2-4)) In light of Saxon's criminal

record, the serious nature of the charges to which he had pled guilty, and his breach of the

cooperation agreement, the State asked the court to impose "the maximum sentence of 119 and a

half years to life . . . . and the maximum fine of $150,000." (Id. at 13-14)  Saxon argued that the

DAO had breached the Agreement by failing to adequately protect his family.  (Id. at 14-20)

The court rejected Saxon's arguments and sentenced him to a prison term of 109 years to life.

(Id. at 27)

## II.     POST-SENTENCING PROCEEDINGS

### A.     State Court Proceedings

In May 2004, Saxon filed a pro se motion pursuant to N.Y. Crim. Proc. L.

("CPL") §§ 440.10 and 440.20 to vacate the judgment and set aside his sentence.  (R & R (Dkt.

No. 18) at 9-10 (citing Resp. Ex. D) ("First CPL Motion"))  Saxon argued that the judgment

should be vacated because the DAO had induced his plea by "fraud, false statements,

misrepresentation, threats, duress, or broken promises," and that the sentence should be set aside

because he was denied due process when the sentencing court denied his request for an inquiry

into the prosecutor's alleged breach of the Agreement.   (Id. (citing First CPL Motion at 1-2, 10-

14))  Saxon contended that the DAO had "renege[d]" on its promise to protect his family in

exchange for his cooperation, and that he had "detrimentally rel[ied] on [that] promise" in

agreeing to plead guilty.  (First CPL Motion at 1-3, 8-10)  Justice William Wetzel of the

Supreme Court of the State of New York, New York County, issued an opinion denying

Petitioner's motion on December 1, 2004.  (Resp. Ex. F)  Saxon then moved for leave to appeal

the denial of the motion to the Appellate Division.  The Appellate Division granted that

application and consolidated that appeal with defendant's direct appeal from the judgment of

conviction.  People v. Saxon, Slip Op. M5886 (1st Dept. February 5, 2005) (Ellerin, J.)

In his appeal to the Appellate Division, Saxon argued that he was entitled to either

specific performance of the Agreement or withdrawal of his guilty plea.  (Resp. Ex. H ("Pet.

App. Br.") at 17-27)  Saxon argued that the DAO had breached the Agreement in the first

instance.  Saxon further argued that the sentencing court should have conducted a hearing into

the reasons for his escape, and that Justice Wetzel erred in denying his fraudulent inducement

and due process claims.  (Id. at 22-25)  The Appellate Division rejected these arguments and

affirmed Saxon's conviction on April 18, 2006.  Saxon then sought leave to appeal from the New

York Court of Appeals.  That Court denied his request on June 28, 2006.  See People v. Saxon, 7

N.Y.3d 763 (2006).

   While Saxon's direct appeal was pending, he filed a second CPL § 440 motion.

Although Saxon again argued that his plea had been induced by fraud and misrepresentation

(Pet. Ex. C ("Second CPL Motion")), he offered a different theory of misrepresentation.  Saxon

asserted that he had relied on Bodek's misrepresentation that the promised eighteen-year

sentence would run concurrently with any time he might owe if he were violated on his parole.

(Id. at 3-4)  Then-existing law required that any sentence imposed on a parole violation run

consecutively to any sentence imposed on a separate crime.  Saxon argued that he also relied on

Bodek's false assertions that (1) he could not find any cases addressing the issue; (2) the relevant

statute was a new one; and (3) "this issue hasn't come up yet."  (Id. at 9, 15-16)  Saxon claimed

that these misrepresentations likewise induced his guilty plea.  (Id. at 6, 8-9, 11)

   Saxon also claimed that the prosecutor had committed "fraud or

misrepresentation" by allegedly assuring Saxon that he had not yet been found in violation of

parole, and that Saxon would not be found in violation merely as a result of his guilty plea.  (Id.

at 13)  As proof of the falsity of this representation, Saxon attached a May 11, 2006 Notice of

Delinquency to his CPL motion which states that the date of delinquency was November 11,

1999. (Id.) Saxon argued that the Notice clearly shows that he had been found in violation of parole prior to entering the Agreement in 2001.

Justice Wetzel denied Saxon's second CPL Motion in a January 29, 2007 order. (Pet. Ex. D ("Jan. 29, 2007 Order")) The court found that "every issue contained within the plea agreement was fully discussed" with Saxon and his attorney. (Id. at 4) The court further noted that "Bodek explained that because of the anticipated sentence of 18 years (premised on the defendant's full compliance with the terms of the cooperation agreement) and the fact that the defendant could reduce that sentence to 15 years and some amount of months with good behavior, a parole violation if lodged running consecutively would bring the defendant back to the ultimate sentence of 18 years." (R & R at 15 (citing Jan. 29, 2007 Order at 5-6)) All of this was explained "on the record at the time of the plea before the court, the defendant and counsel." (Jan. 29, 2007 Order at 6) Consequently, the court concluded that Saxon's claim "that there was a misrepresentation . . . is ridiculous." (Id.) Saxon subsequently applied, pursuant to CPL § 460.5, for leave to appeal from the denial of his motion. (Pet. Ex. E) On May 3, 2007, the Appellate Division denied Saxon's application. (Id.)

In April 2007, Saxon moved for a writ of error coram nobis. (Pet. Ex. F ("Writ of Error Coram Nobis")) Saxon asserted that his appellate counsel had rendered ineffective assistance by failing to argue that his lawyer at sentencing had rendered ineffective assistance in not moving to withdraw Saxon's plea based on the alleged misrepresentations and in not requesting a hearing on the issue. (Writ of Error Coram Nobis at 2-3) The Appellate Division denied Petitioner's motion, People v. Saxon, M-2062, 2007 N.Y. App. Div. LEXIS 8683 (1st Dept. July 19, 2007), and the Court of Appeals denied leave to appeal from that decision, finding

8

"no question of law presented which ought to be reviewed." (Pet. Ex. G ("Certificate Denying Leave"))

Finally, in 2008, Saxon filed a third motion pursuant to CPL § 440. (Pet. Ex. H ("Third CPL Motion")) Saxon again argued that his lawyer at sentencing had been ineffective, but presented a different theory of ineffectiveness. Saxon contended that the lawyer had not provided effective assistance because he had a conflict of interest. Saxon had not paid the lawyer the agreed-upon fee, and the lawyer did not want to be associated with a cooperator. (Id. at 6-8) Saxon also argued that the sentencing court had improperly relied on the prosecutor's false claim that Saxon "was convicted previously for three murders," when in fact Saxon had not previously been convicted of "murder." (Pet. Ex. H ("Pet. Aff. to Support Motion") ¶¶ 2-5) The State contended that these claims were both procedurally barred and meritless. (Resp. Ex. M ("Response to Third CPL Motion" ¶¶ 10-12)) The State noted that it had "made clear to the Court that, while the defendant had killed three people during the course of his criminal career, he had received two very generous plea offers on the first two murders, resulting in convictions for manslaughter and weapons offenses." The State further noted that, prior to sentencing, the court had read the prosecutor's sentencing memorandum, which accurately described Petitioner's prior convictions. (Id. at ¶¶ 11-12)

On June 12, 2008, the court determined that the issues raised were "the same as those raised in the [2004] motion and are therefore barred under the doctrine of res judicata. To the extent the defendant raises any new issues in the instant motion, those issues could and should have been raised in the earlier motion." (Pet Ex. I ("June 12, 2008 Order")) Accordingly, the court denied the motion. (Id.) Saxon's application to appeal from the dismissal was denied. (Pet. Ex. J)

**B.**     **Habeas Corpus Petition**

On December 28, 2008, Saxon filed this <u>pro se</u> petition pursuant to 28 U.S.C. §

2254.  Saxon's initial petition asserted four grounds for relief.  (Pet. Br. (Dkt. No. 2))  On

October 15, 2010, Saxon submitted a motion to amend pursuant to Fed. R. Civ. P. 15(c).  (Pet.

Motion to Amend (Dkt. No. 10))  Saxon's original and amended petitions present seven

arguments:

 (1) his guilty plea was involuntary because it was induced by the State's false promise that the sentence imposed for these offenses – after Saxon had successfully completed his cooperation with the DAO – would run concurrently with any sentence imposed on Petitioner for violating his parole;

 (2) his guilty plea was involuntary because Mr. Bodek misrepresented the state of the law on whether the promised sentence could be imposed to run concurrently to any sentence imposed on a parole violation;

 (3) his Due Process rights were violated when the sentencing court relied on factually incorrect information regarding his prior convictions in imposing sentence;

 (4) his appellate counsel was constitutionally ineffective in failing to argue that Saxon should be permitted to withdraw his guilty plea;

 (5) the state court made unreasonable factual determinations in finding that the prosecutor did not intentionally misrepresent the record as to Saxon's parole status and in finding that Saxon's parole violation was based on his escape;

 (6) the state court's decision that Mr. Bodek "did not use misrepresentation when he stated [that] the issue [concerning concurrent sentences had] not come up yet" was an unreasonable application of clearly established Federal law; and

 (7) the state court overlooked the cumulative effect of the alleged misrepresentations and violations of due process.

(<u>See</u> Pet. Br. (Dkt. No. 2) and Pet. Mot. to Amend (Dkt. No. 10))

**C.**     <u>Magistrate Fox's Report and Recommendation</u>

On May 23, 2011, Judge Fox issued a 41-page R & R recommending that the Court dismiss Saxon's Petition in its entirety. (Dkt. No. 18) Judge Fox thoroughly analyzed and then rejected each of Saxon's arguments.

As to Saxon's claim that his plea was involuntary because it was induced by misrepresentations concerning his sentence, Judge Fox noted that, under the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"),[2] federal law is only clearly established when it is embodied in a holding of the Supreme Court. (R & R (Dkt. No. 18) at 26 (citing <u>Thaler v. Haynes</u>, 559 U.S. 43, 47 (2010)) Judge Fox thus found Saxon's reliance on <u>Brady v. United States</u>, 397 U.S. 742 (1970) misplaced.

In <u>Brady</u>, the Supreme Court noted that "a plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats . . . [, or] misrepresentations (including unfulfilled or unfulfillable promises)." 397 U.S. at 755. However, the Supreme Court has since characterized this language as "dictum." (R & R (Dkt. No. 18) at 26 (citing <u>Puckett v. United States</u>, 556 U.S. 129, 138 n.1 (2009))) Accordingly, Judge Fox

---

[2] The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved in an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

concluded that <u>Brady</u> does not support Saxon's contention that it is clearly established Federal

law that a guilty plea is involuntary when induced by a misrepresentation or an unfulfillable

promise. (R & R (Dkt. No. 18) at 26)

        Judge Fox went on to conclude that no participant in the plea proceedings had

made a misrepresentation concerning Saxon's sentence. Judge Fox noted that "'it is hornbook

law that misrepresentation requires an intent <u>at the time of contracting</u> not to perform.'" (<u>Id.</u> at

27 (quoting <u>Puckett</u>, 556 U.S. at 138 n.1 (emphasis in <u>Puckett</u>))) Judge Fox found no evidence

of such a fraudulent intent in Saxon's case:

> . . . the plea proceeding transcript demonstrates that the prosecutor, defense attorney,
> Bodek and the court all understood and agreed that New York law requires that any
> parole time owed by Saxon run consecutively to the sentence that would be imposed
> pursuant to the agreement. The plea proceeding record also demonstrates that all the
> parties involved agreed, as the court stated, "that the intent be that the [e]ffect of the time
> owed by parole . . . in effect would have a concurrent effect. And that [] as long as that
> intent is on the record, I feel we would be able to work that out." Additionally, the court
> stated: "I think it is clear that if the cooperation is fully successful, that will be an
> intention [the prosecution] will be forced to implement because it[']s so stated on the
> record."

(R & R (Dkt. No. 18) at 27 (quoting Plea Tr.)) As there was a clear intent to perform, Judge Fox

concluded that there was no misrepresentation:

> . . . as no intent to misrepresent the terms of imprisonment to which Saxon was exposed,
> or the relationship of any parole time owed by Saxon to the sentence to be imposed
> pursuant to the agreement existed at the time of the agreement, the plea proceeding or at
> any other time, the state court's rejection of Saxon's claim that his plea was involuntary
> was neither contrary to nor an unreasonable application of the Supreme Court precedents
> governing the voluntariness of a guilty plea.

(<u>Id.</u> at 27)

        As to Saxon's claim that the sentencing judge had relied on misrepresentations

about his prior convictions, Judge Fox found that the claim was not procedurally barred, but

concluded that Saxon had not shown that the sentencing judge had relied on misinformation, and

had not demonstrated that the state court's refusal to extend the principals of <u>Townsend v. Burke</u>, 334 U.S. 736 (1948), to the facts of his case was unreasonable. (<u>Id.</u> at 27-32).

<u>Townsend</u> holds that where a "prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue[, s]uch a result, whether caused by carelessness or design, is inconsistent with due process of law, and such a conviction cannot stand." <u>Townsend</u>, 334 U.S. at 741.  Judge Fox found that there were procedural and substantive distinctions that rendered <u>Townsend</u> inapplicable to Saxon's case, including that Saxon was represented by counsel, was adjudicated a violent felony offender, and admitted to the convictions contained in the information charging him with being a predicate violent felon. (<u>Id.</u> at 30)  While Judge Fox found it "unfortunate" and "troublesome" that both the prosecutor and the sentencing judge had referred to Saxon's prior convictions as "murders,"

> unlike in <u>Townsend</u>, these inaccurate statements were not assumptions upon which the court relied in imposing the sentence on Saxon.  They were imprecise words used to describe the factual circumstances involved in Saxon's prior convictions, presented clearly to the court, not only in the presentence memorandum, but also by the clerk at the beginning of the sentencing proceedings.

(<u>Id.</u> at 31)  Under these circumstances, Judge Fox found that the state court's decision denying Saxon's claim was neither contrary to, nor an unreasonable application of, <u>Townsend</u>.

As to Saxon's fourth claim – ineffective assistance of appellate counsel – Judge Fox concluded that Saxon had not "demonstrate[d] how the state court's decision was contrary to or an unreasonable application of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984)." (<u>Id.</u> at 33)  Judge Fox further found that Saxon's argument was conclusory and failed to satisfy the burden imposed by 28 U.S.C. § 2254(d). (<u>Id.</u>)

Saxon's fifth claim concerned the prosecutor's alleged misrepresentations regarding the date of Saxon's parole violation and the state court's determination that Saxon's

13

parole violation was based on his escape.  As to the date issue, Judge Fox held that even if the

prosecutor "might have known . . . . that Saxon's parole violation delinquency date would be in

the fall of 1999, that would be of no consequence since the record before the state court shows

that the Parole Board did not issue its Notice of Final Declaration of Delinquency until May 11,

2006." (Id. at 35)

       As to the basis for the parole violation, Judge Fox found that Saxon had

successfully rebutted "the presumption of correctness" concerning the state court's finding that

the notice of delinquency was issued based on Saxon's escape from custody.  (Id. at 36)  Judge

Fox held that "no deference is due that determination" because – other than the state court's

determination – there was nothing in the record that linked the Notice of Delinquency to Saxon's

escape.  (Id. at 35)  Judge Fox went on to hold, however, that even though Saxon had established

that the state court's determination of fact was unreasonable, he had failed to show that he was

"in custody in violation of the Constitution or the laws of the United States." (Id. at 37)  Judge

Fox concluded that the reason the Notice of Delinquency was issued would not be determinative

of whether Saxon's due process rights had been violated.  Irrespective of the cause for issuing

the Notice, the relevant consideration for determining whether a constitutional misrepresentation

had occurred was when the Notice was issued – a fact that Judge Fox had already concluded was

of "no consequence," because the record before the state court showed that the Notice of

Delinquency was not issued until May 11, 2006 – nearly five years after Saxon's guilty plea.  (Id.

at 37-38; see id at 35)

       Saxon's sixth claim concerned Bodek's alleged misrepresentation to the court that

"the issue of [the effect of a parole violation on a felony sentence had] not come up yet." (Id. at

38)  Judge Fox rejected this claim because Saxon could not point to any "clearly established

federal law that makes Bodek's less than perfect knowledge of the relevant sentencing law violative of his due process rights." (Id. at 38)

Judge Fox did find, however, that the state court had made an unreasonable determination of fact in concluding that the parties had contemplated that Saxon would serve six-sevenths of his eighteen year sentence – fifteen years and four months – and then serve a sentence of two years and four months for his parole violation. (Id. at 39) Judge Fox concluded that the parties' understanding was that, "provided Saxon cooperates and receives a time reduction for good behavior, he would ultimately serve '15 years and change, six sevenths of the eighteen, whatever that is and that would satisfy any parole time he might still owe if they violate him.'" (Id. at 39-40 (quoting Plea Tr. 18)) (emphasis added in R & R). Although Judge Fox determined that the state court had made an unreasonable determination of fact on this issue, he concluded that Saxon was not entitled to any relief because he had not demonstrated any violation of Federal law.

In his seventh claim, Saxon argued that he was prejudiced by the cumulative effect of the misrepresentations discussed above. Saxon sought leave to withdraw this argument before the R & R was issued. (Id. at 40) Judge Fox nevertheless addressed the argument, concluding that it was "to no avail" because Saxon had not demonstrated any constitutional violation with respect to any of his claims. (Id.)

**D.      Objections to the Report and Recommendation**

On August 10, 2011, Saxon submitted his objections to the R & R.[3] (Pet. Obj. (Dkt. No. 24)) Saxon argues that Judge Fox erred in finding that Brady does not constitute

_____

[3] On June 3, 2011, Saxon submitted a motion seeking an extension of time to make objections to Judge Fox's R & R. (Dkt. No. 19) On June 5, 2011 – before the Court had ruled on his motion –

clearly established Federal law for purposes of the AEDPA. (Id. at 1)  Saxon next contends that

Judge Fox erred in finding that misrepresentations and fraudulent intent are necessary to show

that a plea is involuntary.  (Id. at 2)  Saxon also contends that Judge Fox's findings regarding

Bodek's statements at the plea reflect a misapplication of Blackledge v. Allison, 431 U.S. 63

(1977), and that the court's findings concerning the state court judge's unreasonable factual

determinations require that he be granted relief.  (Id. at 3, 8)

       In objections four, five, and six, Saxon argues that Judge Fox erred in concluding

that the sentencing court did not rely on misstatements about his prior convictions, and contends

that Judge Fox should have applied Townsend v. Burke, 334 U.S. 736 (1948).  (Id. at 4-6)

       Saxon's last objection concerns Judge Fox's ruling on his "cumulative effect"

claim.  Saxon has since moved to withdraw this objection in the event that the Court concludes

that it has not been exhausted.  (Pet. Mot. (Dkt. No. 28))

       Respondent also filed objections to the R & R.  (Resp. Obj.)  Respondent argues

that Judge Fox erred in concluding that certain of the state court's factual determinations were

unreasonable. (Resp. Obj. at 4-5)  Respondent also contends that Judge Fox should have found

that Saxon's third claim was procedurally barred, and that he erred in finding that the prosecutor

and sentencing judge made inaccurate statements at sentencing about Saxon's prior convictions.

(Id. at 1)  Finally, Respondent argues that Judge Fox improperly considered a 2002 Notice of

Delinquency, and contends that Judge Fox erred in concluding that Saxon had "rebutted the

---

Saxon submitted objections. (Pet. June 5, 2011 Obj.)  On July 28, 2011, this Court granted
Saxon's motion for an extension of time. (Dkt. No. 21)  On August 10, 2011, Saxon submitted a
second round of objections. (Dkt. No. 24)  The two sets of objections differ in one respect:  the
original objections include an argument that Judge Fox should have ruled that the state court
erred in rejecting his ineffective assistance of counsel claim. (Pet. June 5, 2011 Obj. at 10)  That
objection is considered separately below.

presumption of correctness of the state court's factual determination that Saxon's notice of

delinquency was issued because he escaped from custody[.]" (Id. at 3 (citing R & R (Dkt. No.

18) at 36))

## DISCUSSION

## I.   STANDARD OF REVIEW

In reviewing a Magistrate Judge's R & R, a district court may "accept, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28

U.S.C. § 636(b)(1).  A district court must review de novo "those portions of the report or

specified proposed findings or recommendations to which objection is made." 28 U.S.C. §

636(b)(1).  However, "the phrase de novo determination in section 636(b)(1), as opposed to de

novo hearing, was selected by Congress 'to permit whatever reliance a district judge, in the

exercise of sound judicial discretion, cho[oses] to place on a magistrate's proposed findings and

recommendations.'" Grassia v. Scully, 892 F.2d 16, 19 (2d Cir. 1989) (quoting United States v.

Raddatz, 447 U.S. 667, 676 (1980) (emphasis in original)).  Further, "'to the extent . . . that the

[objecting] party makes only conclusory or general arguments, or simply reiterates the original

arguments, the Court will review the [R & R] strictly for clear error.'" DiPilato v. 7-Eleven,

Inc., 662 F. Supp. 2d 333, 339 (S.D.N.Y.  2009) (quoting IndyMac Bank, FSB v. Nat'l

Settlement Agency, Inc., No. 07 Civ.6865 (LTS)(GWG), 2008 WL 4810043, at *1 (S.D.N.Y.

Oct. 31, 2008)).

As to pro se parties, although their "objections . . . are 'generally accorded

leniency' and should be construed 'to raise the strongest arguments that they suggest,'"

nevertheless, "even a pro se party's objections to a Report and Recommendation must be specific

and clearly aimed at particular findings in the [M]agistrate's proposal, such that no party be

17

allowed a second bite at the apple by simply relitigating a prior argument." Id. at 340 (citations omitted).

Finally, a federal court may grant a writ of habeas corpus only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . ." or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## II.   OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS

### A.   PLEA-RELATED OBJECTIONS

Saxon argues that Judge Fox erred in finding that (1) "there is no clearly established federal law that [a] plea induced by misrepresentation or misunderstanding is [a] Constitutional violation"; and (2) a showing of a misrepresentation and fraudulent intent is necessary to demonstrate that a plea is constitutionally inadequate. (Pet. Obj. (Dkt. No. 24) at 1-2) Saxon contends that proof of a misunderstanding or mistake is sufficient to render a plea constitutionally deficient. (Id. at 2). Saxon further contends that "Bodek's wrongful statements of the 'issue of parole not coming up yet' was . . . a misunderstanding of law or misrepresentation . . . that induced [the] plea and prejudiced [Saxon]." Saxon asserts that he would not have entered into the cooperation agreement or pled guilty had he been aware of the prevailing law. (Id. at 9)

Respondent likewise contends that certain of Judge Fox's findings regarding the plea colloquy are erroneous. (Resp. Obj. at 5-6) Respondent argues that Justice Wetzel properly found that the parties had agreed to a sentence of eighteen years, reflecting a prison term of fifteen years and four months (eighteen years less good time) plus two years and four months for Saxon's parole violation, to run consecutively. (Id.) Hence, the state court did not err in its

factual determinations regarding the parties' shared understanding of the effect that a parole violation would have on the length of Saxon's sentence. (Id.)

Saxon objections to Judge Fox's findings regarding the plea colloquy are based on Blackledge v. Allison, 431 U.S. 63 (1977). In Blackledge, the Supreme Court held that the summary dismissal of a habeas petition was improper where petitioner, a North Carolina inmate, claimed that he had been induced to plead guilty on the basis of an "unkept promise." 431 U.S. at 68. Blackledge holds that

> [i]n administering the writ of habeas corpus and its § 2255 counterpart, the federal courts cannot fairly adopt a per se rule excluding all possibility that a defendant's representations at the time of his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment.

Blackledge, 431 U.S. at 75. Saxon contends that this language constitutes clearly established Federal law that warrants granting his Petition.

Saxon misconstrues the import of Blackledge. Because of deficiencies in North Carolina's plea proceedings at that time, the Supreme Court could not determine whether the allegations in Allison's habeas corpus petition, when measured "against the record of the plea hearing, were so 'patently false or frivolous' as to warrant summary dismissal." Id. at 77-78 (citation omitted); see id. at 77 ("Allison was arraigned . . . under a North Carolina procedure . . . [that] reflected the atmosphere of secrecy which then characterized plea bargaining generally. No transcript of the proceeding was made. The only record was a standard printed form. . . . There is no way of knowing whether the trial judge in any way deviated from or supplemented the text of the form.") Because there was no transcript of the plea proceeding, the Supreme Court concluded that Allison's petition warranted more thorough consideration than a summary

19

dismissal. (Id. at 82). The court remanded the case to allow the petitioner a "full opportunity for presentation of the relevant facts." (Id.) The Blackledge court noted, however, that had different procedures been followed, the "petition would have been cast in a very different light. The careful explication of the legitimacy of plea bargaining, the questioning of both lawyers, and the verbatim record of their answers at the guilty-plea proceedings would almost surely have shown whether any bargain did exist and, if so, insured that it was not ignored." Id. at 79-80.

Blackledge does not constitute clearly established Federal law that a plea induced by a misstatement amounts to a per se constitutional violation that requires granting withdrawal of the plea. Indeed, as the Supreme Court noted in Puckett v. United States, a defendant seeking to withdraw his plea on the basis of a prosecutor's misstatement in connection with a plea agreement must demonstrate not only that the prosecutor made a misstatement, but also that there was "an intent at the time of contracting not to perform." Puckett, 556 U.S. at 138 n.1.

In any event, the facts here are not comparable to those in Blackledge. Here, the plea colloquy was detailed, transparent, and transcribed. Moreover, Saxon's claims have been carefully weighed by several courts and he has enjoyed ample opportunity to present relevant facts and legal argument in support of those claims. Finally, neither the state courts nor Judge Fox applied a per se rule barring Saxon's claims. In short, the concerns that animate Blackledge are not applicable here.

In arguing that he need not show an intent – on the prosecutor's part – not to perform, Saxon quotes an excerpt from a footnote in Blackledge:

> the provision of such agreements of course carries great weight, but it can be set aside by a court on the grounds of fraud, mistake, duress, or on some ground that is sufficient for setting aside other contracts.

(Pet. Obj. (Dkt. No. 24) at 3 (quoting Blackledge, 431 U.S. at 75 n.6))

The language quoted by Saxon is taken out of context.  In explaining that federal courts considering habeas petitions cannot impose a per se rule holding that "such factors as misunderstanding, duress, or misrepresentation by others [could never render a] guilty plea a constitutionally inadequate basis for imprisonment," the Supreme Court made the following point in an accompanying footnote:

> An analogy is to be found in the law of contracts.  The parol evidence rule has as its very purpose the exclusion of evidence designed to repudiate provisions in a written integration of contractual terms.  Yet even a written contractual provision declaring that the contract contains the complete agreement of the parties, and that no antecedent or extrinsic representations exist, does not conclusively bar subsequent proof that such additional agreements exist and should be given force.  The provision denying the existence of such agreements, of course, carries great weight, but it can be set aside by a court on the grounds of fraud, mistake, duress, "or on some ground that is sufficient for setting aside other contracts." 3 A. Corbin, Contracts § 578, p. 403 (2d ed. 1960); see id., at 405-407, and nn. 41, 43.

Blackledge, 431 U.S. at 75 and n.6.

This language has no relevance here, because Saxon has not argued that there is any inconsistency between the plea agreement and the statements made at the time of his plea.  To the extent that Saxon argues that this language indicates that "intent is not relevant[] when the inducement is based on [an] illegal promise by law" (Pet. Obj. (Dkt. No. 24) at 3), Blackledge provides no support for that proposition.

In any event, and as Judge Fox found, the transcript of the plea colloquy makes clear that no misstatements or misrepresentations were made at the time of the plea.  The defense attorney, the court, and the court's sentencing expert Hillel Bodek all agreed that – as a general matter – any sentence on a parole violation must run consecutive to another term of imprisonment.  (Pet. Ex. A (Plea Tr.) at 17-21)  Based on discussions with the New York State Division of Parole, however, Bodek had concluded that, under the circumstances of this case, a

21

"determinate sentence" of eighteen years – which after good time is subtracted, amounts to a

sentence of fifteen years and four months – "would satisfy any parole time [Saxon] might still

owe if [the Division of Parole were to] violate [Saxon]." (Id. at 18)  The defense attorney and

prosecutor both made clear that their agreement was that any sentence Saxon would receive on

the parole violation would run concurrently with the sentence imposed for the crimes that were

the subject of his guilty plea.  (Id. at 17, 20-21)  The court likewise made clear that it intended to

hold the DAO to the agreement it had made regarding concurrent sentences: "it is clear that if the

cooperation is fully successful, that will be an intention [the DAO] will be forced to implement

because it['s] so stated on the record."  (Id. at 20)  The judge also stated that – given the "intent

[that had been expressed] on the record" – she believed that "we would be able to work that out."

(Id.)  While the judge expressed optimism that the result agreed to by the parties could be

accomplished, she cautioned that she would not commit an unlawful act in order to achieve the

parties' objective:  "It['s] important that we understand I can't do what is illegal.  I cannot at the

time of sentence say parole is to run concurrent.  I can only attempt with Mr. Bodek's help to

state it in a way that is lawful but achieves the result that is sought."  (Id. at 21)

Given this colloquy, it is clear that there was no misstatement or

misrepresentation.  The general rule that a sentence on a parole violation must be imposed to run

consecutively was articulated; there is no evidence that Mr. Bodek misrepresented his analysis of

the law or his communications with counsel for the Division of Parole; the parties' agreement to

a concurrent sentence was clearly expressed; the court's willingness to attempt to achieve the

parties' objective was clearly expressed; and the uncertainty about whether that objective could

be accomplished was likewise clearly expressed.  There is no evidence that any participant in the

plea proceedings had any intent to mislead, nor is there any evidence that the prosecutor – at the

22

time of the plea – had no intent to perform.  Saxon has not demonstrated that the state court's

rejection of his argument that his plea was involuntary is contrary to, or an unreasonable

application of, clearly established Federal law.[4]

**B.      SENTENCING-RELATED OBJECTIONS**

Saxon argues that Judge Fox erred in concluding that the AEDPA governs

Saxon's claim that the sentencing court relied on incorrect information about his prior

convictions in imposing sentence.  (Pet. Obj. (Dkt. No. 24) at 4)  Saxon contends that "pre-

AEDPA standards apply," because this issue was never decided on the merits.  (Id.)  Under these

circumstances, Saxon asserts that Townsend v. Burke rather than the deferential AEDPA

standard applies.  (Id.)  Saxon further argues that Judge Fox erred in finding that (1) the

sentencing court had not relied on inaccurate statements regarding his prior convictions, and (2)

the state court had not acted "unreasonably [in] fail[ing] to extend [the] legal principles of

Townsend v. Burke . . . to [this] claim."  (Id. at 5-6)

Respondent asserts two objections to Judge Fox's findings pertaining to Saxon's

sentencing.  Respondent first argues that Saxon's misinformation claim is procedurally barred.

(Resp. Obj. at 1)  Second, Respondent argues that Judge Fox erred in concluding that the

sentencing court and prosecutor's references to Saxon's prior killings as "murders" were

misstatements.  (Id.)  Respondent argues that the sentencing court and the prosecutor accurately

described the facts underlying Saxon's prior convictions.  (Id. at 1-2)

---

[4]  To the extent that Respondent argues that Judge Fox should have found that the parties had
agreed to a sentence of eighteen years, reflecting a prison term of fifteen years and four months
(eighteen years less good time) plus two years and four months for Saxon's parole violation, to
run consecutively, see Resp. Obj. at 5-6, that objection is overruled.  Respondent's argument is
not supported by the record.

In his R & R, Judge Fox agreed with Saxon that his misinformation claim was not procedurally barred. (R & R (Dkt. No. 18) at 30) Judge Fox went on to find, however, that Saxon had not demonstrated that (1) the sentencing judge relied on misinformation in sentencing Saxon; or (2) the state court's refusal to extend the principles of Townsend v. Burke, 334 U.S. 736 (1948) to this case was unreasonable. (Id. at 32) Judge Fox identified procedural and substantive distinctions that rendered Townsend inapplicable. While Judge Fox found that references to Saxon's prior convictions as "murders" was "unfortunate," he concluded that these misstatements amounted to "imprecise words used to describe the factual circumstances involved in Saxon's prior convictions." Given that the crimes Saxon had pleaded guilty to were clearly outlined in the sentencing materials reviewed by the court, Judge Fox concluded that Saxon had suffered no prejudice. (Id. at 31) Stated another way, Judge Fox concluded that there was no evidence that the sentencing court believed that Saxon had previously been convicted of two murders. (Id.)

As to Respondent's contention that Saxon's claim is procedurally barred, Respondent has not demonstrated that Judge Fox's thorough analysis of this issue is clearly erroneous. See id. at 29-30. Respondent's bare assertion of error is not sufficient to warrant greater scrutiny. DiPilato, 662 F. Supp. at 339 ("'to the extent . . . that the [objecting] party makes only conclusory or general arguments . . . the Court will review the [R & R] strictly for clear error'").

Saxon's first objection – that no deference should have been given to the state court determination that misstatements by the prosecutor and the sentencing court were not relied upon by the sentencing court – is meritless. (Pet. Obj. at 4-5) Judge Fox did not, in fact, give deference to the state court decision. Instead, Judge Fox conducted an independent analysis of

24

the record in determining that the references to Saxon's prior "murders" did not engender

confusion – on the court's part – about the nature of Saxon's prior convictions. (R & R (Dkt.

No. 18) at 30-31)  In his objection, Saxon does not point to any aspect of Judge Fox's analysis

that would warrant another conclusion, and this Court finds no error in Judge Fox's analysis.[5]

Saxon also argues that Judge Fox and the state court erred in not applying

Townsend.  (Pet. Obj. (Dkt. No. 24) at 5-6)  Judge Fox identified several substantive and

procedural differences between the proceedings here and those in Townsend, including that

Saxon (1) was represented by counsel, (2) was adjudicated a violent felony offender, and (3)

admitted to the convictions contained in the information charging him with being a predicate

violent felon.  (R & R (Dkt. No. 18) at 30)  Judge Fox concluded that these differences were

sufficient to render Townsend inapplicable.  Saxon has not demonstrated that this finding is

erroneous.

### C.   **PAROLE-RELATED OBJECTIONS**

Saxon contends that his Petition should be granted based on the state court's

unreasonable determination of facts related to his parole status and the effect that a parole

violation would have on the agreed-upon sentence.  (Pet. Obj. (Dkt. No. 24) at 3)

Respondent contends that Judge Fox erred in concluding that Saxon had

successfully "rebutted the presumption of correctness of the state court's factual determination

---

[5]  Respondent's objection – that references to Saxon's prior crimes as "murders" were accurate –
is likewise not persuasive.  This Court agrees with Judge Fox's conclusion that references to
Saxon's prior crimes as "murders" were imprecise and described the circumstances of Saxon's
crimes rather than the nature of his prior convictions.

that Saxon's notice of delinquency was issued because he escaped from custody[.]" (Id. (citing

R & R (Dkt. No. 18) at 36))[6]

       In claim five of his Petition, Saxon argues that the state court had erred in ruling

that (1) the DAO had not engaged in misrepresentation when it stated that Saxon had not yet

been violated by the Division of Parole at the time of the Agreement, and (2) Saxon's parole

violation was based on his escape. (Pet. Motion to Amend (Dkt. No. 10) at 1)  As to the timing

of the parole violation, Judge Fox found that the state court's determination was not

unreasonable. (R & R (Dkt. No. 18) at 35)  As to the nature of Saxon's parole violation, Judge

Fox found that the state court erred in determining that Saxon's parole had been violated because

of his escape.  As Judge Fox correctly notes, "the record indicates that Saxon's notice of final

declaration of delinquency was issued by the Parole Board because of his felony conviction

. . . ." (Id. at 36)[7]  Judge Fox went on to find, however, that Saxon has not demonstrated that the

state court's error as to the nature of Saxon's parole violation led to a constitutional deprivation.

(Id. at 37-38)  This Court finds no error in Judge Fox's analysis.

       In claim six of his Petition, Saxon argues that the state court made an

unreasonable determination of fact in concluding that Bodek "did not use misrepresentation

when he stated [that] the issue [concerning concurrent sentences] had not come up yet." (Pet.

Motion to Amend (Dkt. No. 10) at 2)  In concluding that this argument "lacked merit," Judge

---

[6]  Respondent also appears to object to Judge Fox's consideration of a 2002 Notice of
Delinquency, asserting that Respondent has no knowledge of this document and that it was never
presented to the state court. (Resp. Obj. at 3)  Judge Fox did not consider this document in
issuing his R & R, however.  Judge Fox found that the 2002 Notice of Delinquency was never
presented to the state court, and thus could not be considered in resolving Saxon's Petition. (R &
R (Dkt. No. 18) at 33-34)  Accordingly, this objection is overruled.  In any event, a 2002 Notice
of Delinquency would have no bearing on the validity of Saxon's guilty plea, given that Saxon's
plea was entered on August 9, 2001.
[7]  Respondent's objection on this point is thus overruled.

Fox noted that "[t]he fact that case law existed . . . does not turn Bodek's statement . . . into a misrepresentation." (R & R (Dkt. No. 18) at 38)  This Court finds no error in Judge Fox's determination.

Saxon now argues, pursuant to Federal Rule of Civil Procedure 15(c), that Judge Fox's finding that the state court unreasonably determined that Saxon's parole had been violated because of his escape – rather than because of the conduct and convictions associated with his guilty plea – should be applied to buttress the first two claims in his Petition (i.e., that he was induced to plead guilty through (1) the proffer of an "unfulfillable promise" that his eighteen year sentence under the Agreement would run concurrently with any time he owed to parole; and (2) Bodek's misrepresentations about the state of the law concerning concurrent sentences). (Pet. Obj. (Dkt. No. 24) at 4)

Judge Fox's finding on this point does not assist Saxon, however, because – even accepting that Saxon's parole was violated because of the conduct and convictions associated with his guilty plea, and not because of his escape – Saxon has not demonstrated that his plea was involuntary or constitutionally inadequate.

**D.    OBJECTION RELATED TO CUMULATIVE EFFECT CLAIM**

Saxon objects to Judge Fox's finding "that [the] cumulative effect of claims one, two, five, and six of [the] petition" do not amount to a constitutional violation.  (Pet. Obj. at 10) This Court agrees with Judge Fox's conclusion that – whether considered in isolation or together – Saxon's claims do not make out a constitutional violation.  See R & R (Dkt. No. 18) at 40.

Saxon attempts to withdraw this argument in his reply brief and in a July 31, 2013 letter to the Court.  (Dkt. Nos. 16, 28)  In the letter, Saxon asks that the claim be withdrawn in the event that the Court determines that it has not been exhausted.  While it appears that Saxon

did not present his "cumulative effect" claim in state court, he did raise all of the underlying arguments on which it is based. Pursuant to the 1996 amendments to the AEDPA, district courts have the authority under 28 U.S.C. § 2254(b)(2) to deny habeas petitions containing unexhausted claims on the merits. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). Accordingly, in the interest of judicial economy, this Court concludes that Saxon's unexhausted cumulative effect claim should be dismissed on its merits.

E.     **OBJECTION REGARDING INEFFECTIVE
ASSISTANCE OF APPELLATE COUNSEL CLAIM**

In his June 5, 2011 objections, Saxon argues that Judge Fox erred in not finding that his appellate counsel was constitutionally ineffective. Saxon argues that appellate counsel should have argued that Saxon's prior lawyer was ineffective in not moving to withdraw Saxon's guilty plea on the grounds "that [it] was induced by an illegal promise." (June 5, 2011 Obj. at 10)

Judge Fox found that Saxon had not demonstrated that the state court's determination denying this claim is "contrary to or an unreasonable application of Strickland." (R & R (Dkt. No. 18) at 33) Judge Fox further found that Saxon's conclusory statements are insufficient to satisfy his burden under Section 2254(d). (Id.) This Court finds no error in Judge Fox's determinations.

## CONCLUSION

For the reasons stated above, this Court adopts the findings and conclusions set forth in Judge Fox's Report and Recommendation (Dkt. No. 18) in their entirety. Saxon's Petition for a writ of habeas corpus (Dkt. No. 2) is denied. Because Saxon has not made a

substantial showing that he suffered the denial of a constitutional right, a certificate of appealability will not issue.  28 U.S.C. § 2253; see Tankleff v. Senkowski, 135 F.3d 235, 241 (2d Cir. 1998).  Furthermore, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith.  Coppedge v. United States, 369 U.S. 438, 445 (1962).  The Clerk of the Court is directed to close this case.  Any pending motions should be terminated as moot.

Dated:  New York, New York
       March 21, 2014

SO ORDERED.

Paul G. Gardephe
United States District Judge

29